For our final case of the day, this is Appeal 23-2151, Schimandle v. DeKalb County Sheriff's Office and Mr. Walsh will begin with you. Thank you. May it please the Court, my name is Patrick Walsh and I represent the appellant Justin Schimandle. I would like to reserve three minutes for rebuttal. The issue presented for review is whether an arresting officer is required to consider a conclusively established affirmative defense in determining whether probable cause exists to effectuate an arrest. The answer to that question is yes. On May 16, 2023, the District Court entered judgment on the pleadings pursuant to Rule 12c. The District Court committed several reversible errors in granting judgment on the pleadings. First, the District Court was required to accept as true all well-pleaded facts and to view all inferences in a light most favorable to Mr. Schimandle under the standard for Rule 12c motions. Instead, the District Court opined that video of the incident was inconsistent with Schimandle's report, whereas the First Amendment complaint alleged that Schimandle and Dooning found that it was consistent with Schimandle's report. The District Court found that video surveillance did not capture any aggressive movements by CG, whereas the First Amendment complaint alleges that video shows that CG in fact made aggressive movements toward Mr. Schimandle. In fact, the District Court opined that the video surveillance established probable cause, whereas the First Amendment complaint alleges that the video surveillance showed the absence of probable cause. How do we factor in there the DeKalb County judge's determination, I'm not sure if it was a judge or magistrate, determination that there was probable cause? How do we factor that in? Right. Well, in that case, the District Court is substituting its own opinion for the allegations in the First Amendment complaint and what was in Detective Dooning's report. You're saying it deviates from the previous determination that there was probable cause such that Mr. Schimandle could be charged? Well, Detective Dooning issued a report that found that Schimandle's report, which established an affirmative defense, was consistent with the video evidence of the incident. The District Court then looked at that video evidence and said, I think that video evidence, in fact, establishes probable cause and does not show that C.G. was the aggressor. And my point there is that at this stage, the court has to accept those well-pleaded facts as true. Instead, it gave inferences to the defense that they weren't entitled to and substituted its own opinion of the video for the well-pleaded facts. We are allowed, under the incorporation by reference doctrine, though, to at times look at video. And if video is directly contradictory to something, rely on the video, correct? Yes, I would agree with that premise in general. But in this case, we have statements from the defendant confirming that the video establishes affirmative defense and that the video is consistent with Mr. Schimandle's statement affirming that C.G. attacked him. Thus, it kicked in the defenses under Section 2424 of the Illinois School Code. And here we get into the question of whether Detective Dooning should have or should not have investigated what, in effect, is an affirmative defense. Respectfully, I would disagree with that. I think that Detective Dooning had a conclusively established affirmative defense within his knowledge and he reported that it actually existed. This is different from, for instance, the McBride case, where that's a case that the district court relied on rather heavily, as did the defendants. In that case, there was one video of an incident that didn't really show probable cause. And the defendant in that case suggested to the police officer that the police officer watch a second video that he suggested would establish an affirmative defense of self-defense. The officer declined to do so. And there, the Seventh Circuit found that the officer, once they have the elements of the crime, they're not required to investigate an affirmative defense further. But on the other side, there's sort of a line of demarcation in these cases. Where there is an affirmative defense that's conclusively established, the officer can't turn a blind eye to it. Where Mr. Schmandel was charged, he was completely acquitted of all charges. That's correct. As part of that criminal litigation, was there ever a Franks challenge made to Detective Dooning's affidavit or something that would indicate that there was an insufficient basis for the criminal litigation? The best I can do there is that the criminal case was dismissed on a directed finding. So, the government put its case in, Mr. Dooning, or Mr. Schmandel obviously didn't have to put in a case. That's correct. But it was prior, there was never any jury determination. That's correct. Mr. Walsh, can you articulate as best you can what the Franks or Franks-like theory is with respect to the affidavit? Sure. The theory there is that at the time that Detective Dooning filled out the affidavits, he was aware that CG had attacked Mr. Schmandel, that Mr. Schmandel was a teacher or a dean, and that Mr. Schmandel had the affirmative defense of Section 2424 of the school code, and that actually Detective Dooning intended to charge CG with battery himself, which he did the next day. So there were these facts that Detective Dooning had established through watching video of the incident that he left out of these affidavits that, in our view, and as explained more fully in the briefs, if you completed an affidavit with all these facts, it's our point that the judge reviewing it would not have issued the warrant for the arrest. So, okay, this is helpful. So what you're saying is that your Franks-based theory is a theory of omission. That's correct. Well, it's twofold, and I don't mean to interrupt your honor, but... No, no, no. The twofold part's the important part. Go ahead. So, in part, there's omission, but there's also that he stated that Detective Dooning in his affidavit stated that Schmandl acted without legal authority. We're here based on Section 2424 because CG attacked Schmandl. Well, that's a legal conclusion, right? Well, Detective Dooning, in his report prior to submitting the affidavits, acknowledged that CG was the aggressor and attacked Schmandl, and that would kick in the affirmative defense found under Illinois School Code, Section 2424, which gave Schmandl legal... So, if there's an affirmative misrepresentation side of the Franks theory, it's what you just articulated. The language without legal justification is assigned in battery charge that if there is a legal justification, that it's not a battery. Anything else? In terms of... You said it's kind of twofold, it's omission. Yeah. So, omission by leaving out... I got that. Yes. And, I guess, what I would call dishonesty, or by... He said that there was no legal authority for him to have done what he did. Okay. I got it. Good. So, with respect to the immunity under Section 2424, Detective Dooning knew at the time that he had grabbed Schmandl, that he had pulled Schmandl toward him, he had yelled profanities at Schmandl, and at that point, Schmandl was allowed to defend himself, and under the school code, was allowed to remove CG briefly, and to briefly restrain CG. It's our position that the video, and the video of this incident, and Detective Dooning's confirmation that that video supported Mr. Schmandl's version of events, created issues of fact that should not have been decided under Rule 12C. And with that, if there are no other questions, I'll reserve the remainder of my time. Very good. Thank you. Thank you. We'll now move Ms. Stanker to you for argument on behalf of the appellee. Thank you, Your Honor. Okay. Please, the court. I want to start off by addressing some representations that were made by counsel in his argument. He represented to the court that Detective Dooning acknowledged in his reports that he knew that CG was the attacker. Counsel stated to the court that Detective Dooning was aware that CG was the attacker because the video showed that he was the attacker. That's not true. The complaint does not allege anywhere that Detective Dooning stated in his reports that he knew that CG was the attacker, number one. Number two, although the plaintiff claims that the video shows certain things, it simply doesn't. Counsel is asking, as the district court is now asking this court, to accept as true his allegations in the complaint that the video shows CG being the attacker and ignore what the video actually shows. The video shows the plaintiff placing the student, CG, in a bear hug. The video shows the plaintiff carrying him through the doors. The video shows both plaintiff and CG falling to the ground. It was consistent with what the plaintiff told Detective Dooning in the sense that it depicted what conduct the plaintiff engaged in with respect to CG. It does not show anything that led up to the battery itself. It does not show CG acting aggressively. It does not show CG trying to reach into the plaintiff's pockets. It does not show what would, in a sense, be the aggression that justified the battery. Plaintiff's theory in this case is essentially, and this is what is asserted in the first amended complaint, is that Detective Dooning is liable for false arrest because despite having an admission by plaintiff that he placed a student in a bear hug, carried him through a set of doors, and fell to the ground with him, despite having four eyewitnesses to the incident, and despite having a video recording that was consistent with what the eyewitnesses saw and what the plaintiff said happened with respect to the battery itself, that Detective Dooning was required to accept and rely solely, solely upon the plaintiff's statement alone. To be clear, there was no corroboration for the plaintiff's statement, and most importantly, there was nothing alleged in the complaint to corroborate the plaintiff's story. I acknowledge that in most cases when we're talking about whether there was probable cause to arrest, that it's not a motion to dismiss case. However, this case is unique because based on the plaintiff's own facts, the facts pleaded his complaint, as well as the video that he relies upon to support his first amended complaint, there was no question that there was probable cause to arrest the plaintiff. The video evidence kind of cuts in both directions because some of it is from a distance, it's nowhere near as clear as we'd all like it, everyone would love audio, we don't have audio, all that. But I think some of the points you're making may be fair vis-a-vis Mr. Walsh, but Mr. Walsh makes the point there's no way that video shows that Mr. Schmandl used C.G.'s body to open a door, striking C.G.'s head and side into the door. That aspect of the video is fairly clear because the camera's closer to that door than it was to where the first encounter, I don't see anything suggesting that he used his head to open the door. It looks to me like he used his arm. Your Honor, your point is obviously well taken. In no way am I standing up here and arguing to the court that this video was proof beyond a reasonable doubt that the plaintiff committed a battery. Well, no, your point, I mean, I just, my only point is that I'm not sure, the video's cutting in a lot of different directions, everyone would like the video to be more clear. Absolutely, and my point is only this, that the video does not corroborate the plaintiff's statement that C.G. was the aggressor. While they allege in the complaint that the detective watched the video and the detective, when he watched the video, he knew that there was conclusive evidence that C.G. was the aggressor, that simply isn't true. The detective had more than sufficient probable cause based on plaintiff's own statement and the eyewitnesses in the case. If the video showed what plaintiff alleges that it showed, that somehow that C.G. was the aggressor and this was a clear case of self-defense, then their point would be well taken. But the fact is, is that to argue and to allege that the detective, upon watching the video, had conclusive evidence that C.G. was the aggressor and that plaintiff was justified in his, there was a legal justification for his battery, that simply is not the case. Ms. Stanker, same question to you as I asked to Mr. Walsh, how does the fact that the DeKalb County judge or magistrate, whichever it was, found probable cause factor into our analysis? Well, Your Honor, I have argued before that a judge issuing a warrant based on an affidavit that that is definitive that there was probable cause, or at least it was a rebuttable presumption. Unfortunately, I've lost on that argument before, which is why I suppose I did not make that argument in my brief. That being said, though, I mean, it is important to look at the affidavits that were submitted to the court. Mr. Walsh makes allegations that there was information that was concealed from those affidavits and that there was information that was fabricated, that was put in those affidavits. Certainly, the court has had cases where that is the case. However, this is now one of these types of cases, and to try to pigeonhole what happened into a fabrication of evidence case or a concealment of evidence case simply just doesn't fit. The affidavits, what they say is concealed or that was withheld from the affidavits is the defendant's self-serving statement that he acted in self-defense. There's no allegations that the reports are inaccurate, the detective doing ever did anything, for example, that he left out plaintiffs. Why isn't your response to Judge Brennan, maybe you're saying that is what I'm telling him. Why isn't your response that that finding at the local court level in DeKalb County, we are relying upon that finding absent a viable Frank's theory from Schmandl? And I think the point you're making is you don't see a viable Frank's theory. I made that argument in our motion to dismiss. The district court denied our initial motion to dismiss. We filed the motion for judgment on the pleadings where we focused on the probable cause issue. And we took our arguments that we advanced our motion for judgment on the pleadings based on the district court's ruling on the motion to dismiss. So, and then here today before your honor, I am focused. It's not that I don't believe the fact that a court made a judicial finding that there was probable cause to be insignificant, however, basing my arguments today on the issue on appeal, specifically whether or not the district court aired, whether or not the, well, I guess it's a de novo review, but whether or not based on the facts pled in the complaint, there was probable cause for the arrest. And the fact is, is that the facts pled in the complaint without any question established that there was probable cause to arrest the plaintiff in this case. We don't need to go any farther outside of the complaint. He said that this was the information that was known to detective doing and the detective doing should have ignored all of that and accepted the plaintiff's self-serving self-defense statement alone and that that should have essentially trumped everything. Thank you. Thank you, Ms. Stanker. Mr. Walsh, we'll go to you now for rebuttal argument. Thank you. Um, very briefly, um, counsel claims that there is no evidence that, uh, that detective doing found that CG was the aggressor based on the content of the video. You had a paragraph 16, J, K, and L of the first amendment complaint notes specifically, I won't read it verbatim, but that CG was the aggressor. And this is taken from a written statement given to detective Dunning in paragraph 17, detective Dunning's report noted that Mr. Schmantle's account was similar to his written statement of events and is consistent with what the surveillance video depicts. So detective Dunning specifically confirmed, uh, Mr. Schmantle's version of the events, which means that the, uh, Mr. Schmantle's, uh, statements were corroborated by the video evidence in this case. CG is referred to the state's attorney. CG is 17. I'm not sure if it's juvenile or adult, what ended up happening with that? Uh, I, I can't say for sure. I think he was charged if that's the right term for a juvenile case. My understanding is there was a plea, but I can't say that with all certainty. Um, with respect to the, there being four eyewitnesses, the first amendment complaint is clear that there were no eyewitnesses interviewed other than those who were in the foyer who did not see the initial confrontation who, and there was the one video taken of Schmantle going through the doorway into the foyer, but the real witnesses were, uh, in the foyer and took CG from Schmantle at the end of this, uh, altercation. So to claim that there were no witnesses corroborated, you know, really sort of a red herring, uh, lastly, um, with, uh, with respect to whether, um, excuse me, with what was, uh, falsified and left out of the affidavit, I think this, there was a Frank's violation for leaving out. Well, for claiming that there was legal justification, uh, because claiming that there was no legal justification because there clearly was. And he also left out of the affidavit, which I think, but you know, through omission, there can also be a Frank's violation. Um, and you know, he left out that there was a struggle caused by CG and that, uh, Schmantle had only detained him very reasonably and had a right to do so as a, as an educator. So with that, uh, I will conclude and thank you for your time. Thank you, Mr. Walsh. Thank you, Ms. Stanker. The case will be taken under advisement and that completes our hearings for today.